TUCKER. P.
I do not think that in this case the plaintiff’s patent should have been rejected, as there was, to my mind, satisfactory evidence that he had in all things complied with the law.
In the act passed April 1, 1831, (Acts of 1830-31, ch. 28 ; Supp. to Rev. Code, ch. 287,) it is provided by the 17th section, that in a suit for the recovery of lands lying west of the Alleghany mountain, against a person bona fide claiming such lands, medi-ately or immediately, *under a grant from the commonwealth issued previously to the act, who has had the lands duly entered, and has paid all the taxes chargeable upon them, his adversary shall not be allowed to give his grant in evidence, unless he shall shew that he too has had his lands duly entered and charged with taxes according to law, and has actually paid the taxes charged and justly chargeable upon them. Has the plaintiff in this case done so?
First, as to entering the land with the commissioner. This was first required by the act of 1810 ; and accordingly it appears that the lands were on the commissioner’s books in 1811; for they are on the auditor’s list, as delinquent for that year. Now, if they were once on the books, it would seem that this duty was fulfilled, as it was not required to be repeated every year. But be *646 this as it may, on the 26th of February 1835, Thomas O. Taylor, the plaintiff, entered the lands again in his own name, as appears by the certificate of commissioner Wilson. That commissioner further proceeded, according to law, to charge the' tax on the lands for the year 1835, and also those for the back years 1833 and 1832, (that for 1834 having been previously paid in advance into the treasury, as appears by the auditor’s receipt). Why did he not go farther back ? Why did he not charge the taxes for the years anterior to 1832, back to 1811 ? Doubtless because they had before that time been already charged, either to Thomas O. Taylor or Thomas Augustus Taylor ; for the lands had been listed in 1811 in the name of Thomas Augustus Taylor, and must be presumed to have continued so on the books until they were listed by Wilson, in 1835, as Thomas O. Taylor’s. When any thing is entrusted to an officer to be done, the law presumes omnia rite acta, unless the contrary appears. Phillipps on Evid. 614 ; Starkie on Evid. part 2, p. 172. Here we are not at liberty to doubt that Wilson would have proceeded to enter and charge the taxes anterior to 1832, unless they had been already so entered and charged.
*Hext, as to the payment. It is admitted that all the taxes subsequent to 1831 have been paid; and it only remains to enquire whether those of 1831, and anterior, have been also paid or released. The evidence is satisfactory to my mind that they were released. By the act of March 10, 1832 it is provided, that if the amount of taxes, exclusive of damages, charged upon any tract of land returned delinquent for the year 1831 or any prior year, shall not exceed ten dollars, they should be by that act relinquished and forever discharged. To establish the fact that his lands were exonerated by this act, the plaintiff has introduced the certificate of John Adams Smith the acting auditor. On this certificate two questions present themselves.
1. Is the certificate, being that of the clerk and not of the auditor, admissible evidence? This can admit of no doubt. In case of sickness or absence of the auditor, the chief clerk in the auditor’s office is required to perform the duties of the office; and the certificate being signed by J. A. Smith as chief clerk and acting auditor, I must presume he was acting by reason of the sickness or absence of his principal.
2. Does this certificate establish the fact that the taxes on this land were released by law? If the evidence is competent, there seems to be no reasonable doubt of its sufficiency; for the officer whose duty it was to receive the treasurer’s receipt for the taxes, and to give the landholder his receipt for them, has certified that for 1831, and the years preceding that, the taxes were released. An attention to the formula in such cases will render this matter more clear. The landholder wishes to pay off his taxes to the state, at the treasury; which he is expressly authorized to do, “upon the certificate of the auditor of public accounts authorizing the treasurer to receive the same.” 2 Rev. Code, ch. 183, 87, p. 38. Accordingly, he first goes to the auditor, and states his desire to pay the taxes upon his *land. It is the auditor’s duty to examine the commissioner’s books on file in his office, ascertain the taxes due upon the land, and issue his order or warrant to the treasurer to receive the amount. The treasurer does receive the amount, for which he gives his receipt. This receipt is handed to the auditor, who takes it up, and gives in lieu of it his own receipt; and that closes the transaction. That receipt of the auditor is a quietus to the party. In the performance of these duties, the auditor must examine the commissioner’s books, he must ascertain what is due; he must therefore, in that examination, decide whether the lands of the party are or are not exonerated by the act of March 10, 1832. If not exonerated, the amount due for them should be certified, that it may be paid. But he cannot decide whether they were exonerated, without ascertaining that the taxes anterior to 1832 did not exceed ten dollars. In the fulfilment of his duty, he must then have ascertained that fact from the books, and must have known that it was a fact when he so certified. The evidence therefore was sufficient. Was it competent? I think it was. The competency may be inferred from what has been already said. The duty of the auditor is to examine the books and ascertain the taxes due. Those which are released are not due. Of those charged, then, he must ascertain what are released. And when a quietus is demanded by the landholder, to which he is certainly entitled when he has paid all that is due, what is the auditor to give? If he is to give a receipt or quietus for those taxes which are paid, is it not within his province to give also a certificate that the other taxes, which were charged on the books, have been released? If the receipt is evidence of payment, why should not the certificate of the officer whose duty it is to decide what is due, be proper evidence of what has been released? It is his business to examine and to judge whether the arrears before 1832 were under *ten dollars, and were therefore released; it was the party’s right to have evidence of that fact; and it was therefore competent for the auditor to give it'.
I am therefore of opinion that the patent was improperly rejected.
As to the other question, as I have not a shadow of doubt of the constitutionality of the law, and as it is not necessary to be decided, I shall not enter upon a consideration of the elaborate argument on the subject. Suffice it to say, that it has not had the effect of shaking the opinion I have always entertained, that however harsh many of our land laws may seem, it was fully competent to the legislature to pass them. The act in question is one of those, and harsh as it may be, it is the law of the land, which we must respect. I am not sure that it will not, upon the whole, be beneficial
PER CURIAM, Judgment reversed, and cause remanded for a new trial.